UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

CRAIG ALEO,

        Defendant.
_____/

Case No. 09-20165
HON. BERNARD A. FRIEDMAN

## ORDER FOR SANCTIONS

### I. Introduction

On April 13, 2010, at 11:19 a.m, Defendant's attorney filed:

**DEFENDANT'S COMBINED MOTION AND BRIEF IN SUPPORT OF AN ORDER COMPELLING GOVERNMENT COMPLIANCE WITH THE CRIME VICTIMS' RIGHTS ACT**

CRAIG ALEO, by and through the undersigned attorney, hereby moves this Honorable Court for an order directing the prosecutor to file a formal motion, with notice to defense counsel, seeking permission for the child complainant's mother to speak at sentencing.

At the sentencing on April 15, 2010, the Court denied the motion.

On May 3, 2010, the Court issued a written opinion denying Defendant's motion (the "Opinion"). The Court noted in its Opinion that it found Defendant's Motion unwarranted and baseless, and that the Motion served solely as a "blatant attempt to intimidate the minor victim's mother." The Court found that Defendant's Motion inaccurately cited to the Crime Victim's

1

Rights Act ("CVRA"), 18 U.S.C. §3771, and made unfounded assertions regarding steps a victim must take to be heard in open court. In addition, the Court ordered additional briefing on the question of appropriate sanctions, which the parties submitted in a timely manner.

**II.    Analysis**

Defendant's brief affirms the Court's initial impression. Defendant's brief states that he "knew the Presentence Report stated the child's mother intended to address the Court at sentencing pursuant to the CVRA." Dft. Brf. p. 2. The Presentence Report was prepared on March 9, 2010, and revised on April 12, 2010. The Presentence Report was disclosed to Counsel on March 23, 2010. The Report stated, on page nine:

> "Victim Impact
>
> The victim's parents... have not submitted any victim impact statements related to the case, however, they plan on attending the defendant's sentencing hearing and have requested to speak."

Counsel not only received the Presentence Report but filed timely objections. These objections made no mention of, nor took any exception to, the victim's parents' desire to speak nor articulated any issue as to his preserved client's "rights" pursuant to the CVRA. Incredibly, however, in his present brief, Counsel asserts that "Freeman did not know the substance of the victim impact statement, *nor that the child's father intended to address the Court.*" Dft. Brf. p. 3 (emphasis added).

The Presentence Report put Mr. Freeman on notice in no uncertain terms that the "Parents ... have requested to speak." You would not need to be an experienced criminal

defense lawyer/former federal and state prosecutor, as Counsel holds himself out to be[1], to know that people have two parents: a father and a mother. If counsel desired to object, learn more, have notice or whatever, he could have made a request in a timely, appropriate manner.

To get a proper perspective of this matter, it is important to see the e-mails exchanged in relation to statements to be made to the Court:

```
----- Forwarded by Carol Mullins
From:         "Brown, Eaton (USAMIE)"
To:           <Carol_Mullins
Cc:           "Allen, Amy S"
Date:         04/09/2010 09:58 AM
Subject:      ALEO
```

I left you a voicemail, but ended up getting cut-off, so below is the nature of my voicemail

The victim advocate/victim interview specialist and possibly the family of the victim in the ALEO case will be in Court on Thursday, April 15 at 1:30 p.m. for the sentencing. It is likely that one or more will make a statement.

I am not sure if the Judge is planning on having people in the audience to watch court on Thursday afternoon, but I wanted to bring this to your attention because I anticipate that this will be a highly-emotional sentencing. It may be very difficult for the victim's family to have people watching while they speak about the crime. Of course, this is all in the Court's discretion, but I figured that this is something that the Judge may want to be aware of in advance of making plans with his guests.

Please feel free to call if you have any questions.

**Eaton P. Brown**

Assistant United States Attorney

Eastern District of Michigan

211 West Fort Street, Suite 2001

Detroit, Michigan 48226

Phone: 313.226.9184

Fax: 313.226.2621

---

[1] See Mr. Freeman's website formerfedlawyer.com.

3



**Fw: ALEO**
Carol Mullins  to: Bernard Friedman                                04/09/2010 11:38 AM

| History: | This message has been replied to. |

Judge,

It may be a good thing that Mr. Aleo will be sentenced alone at 1:30 instead of with the others at 11:00

Carol L. Mullins; Case Manager
to the Honorable Bernard A. Friedman
313-234-5172



**Re: Fw: ALEO**
Bernard Friedman  to: Carol Mullins                                04/09/2010 02:01 PM
Cc: "Brown, Eaton (USAMIE)", formorfedlawyer, Stephen Thoburn, Jennifer McManus

I appreciate the heads up and I am always glad when victims speak as I think it is important in there own healing. I do have a women's group visiting that day as you know. I am not sure of their schedule as we were supposed to have all matters at 11 and lunch at 12. My purpose in moving this sentencing along was Mr Aleo's health but with witnesses it makes it even more compelling. I can't close the courtroom but certainly could ask the women in the group that are visiting in the morning not to attend if the family feels strongly though I suspect there will be others in the courtroom as this case was reported in the Detroit papers as well as the local Walled Lake paper.

RE: ALEO
John Freeman
to:
bernard_friedman, carol_mullins
04/12/2010 08:52 AM
Cc:
"Eaton Brown (AUSA)", stephen_thoburn, jennifer_mcmanus, formerfedlawyer
Show Details

History: This message has been replied to.
Honorable Bernard Friedman,

Thank you for copying me on the e-mails below, as the government did not provide me with a copy.

It is my understanding that Mr. Aleo's sentencing is scheduled for 1:30 p.m. This will allow him to attend a previously scheduled medical treatment in the morning (he is undergoing a series of daily hyperbaric chamber wound treatments).

On behalf of Mr. Aleo, and his wife and sister who will also attend, I respectfully request that the Court not invite guests to his sentencing. I anticipate the sentencing will be very emotionally charged for Mr. Aleo and his family under normal circumstances. Having additional spectators present may unnecessarily enhance an already difficult situation.

Thank you for your consideration.

John Freeman, Esq.
Liberty Center, Suite 200
100 W. Big Beaver Rd.
Troy, MI 48084
(248) 526-0555 (phone)
(248) 250-5857 (fax)

This electronic mail transmission is from the Law Office of John Freeman, and may constitute an attorney-client communication or contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you are not the addressee or intended recipient, please note that disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please delete it and destroy it without copying it, and notify the sender by reply e-mail, or notify us immediately at our telephone number in the United States (248) 526-0555, so that our address record may be corrected.

The Court finds it compelling that it was not until the emails dated April 9 through April 12, 2010, between the Court, the U.S. Attorney's Office and Counsel regarding the potential "difficulty" for the victim's family to speak to the Court, that Defendant filed his motion. Mr. Freeman had been in contact with the Court and with the Government attorney by e-mail and could have and should have raised his issues about the CVRA much sooner.

This timeline alone, and Counsel's claim of lack of notice, strikes the Court as inconceivable. Counsel's brief states that "[a]s a zealous advocate for his client, Attorney Freeman's concern was that the victim impact statement could contain new, previously undisclosed, factual allegations which could then be used to establish factual matters relied upon by the Court in determining a sentence." Dft. Brf. p. 3. This sentiment is akin to "if pigs could fly." Had that truly been Counsel's concern, it should have been addressed with his initial objections to the Presentence Report; as a separate, yet timely filed, motion; the exchange of e-mails; a new e-mail; a phone call; or compliance with Rule 7.1.[2]

The Court certainly does not seek to "chill the zealous advocacy of the defense bar in unpopular cases." Dft. Brf. p. 5. This matter has nothing to do with aggressively representing a client--just the opposite. It has to do with <u>properly representing</u> a client. The Court respects and appreciates attorneys that protect and aggressively advocate for their clients, but expects it to be done in good faith, in a timely and lawful fashion, following the rules of this Court, with civility, and without abusing the judicial process. The Court recognizes the importance of an aggressive and ardent defense for all criminal defendants. However, it can only draw the conclusion that the

---

[2] The Court notes that Counsel failed to comply with Local Rule 7.1 in seeking concurrence prior to filing its motion, discussed *infra*.

timing of Counsel's motion, after having had the presentence report for weeks, and following the email admission by the U.S. Attorney's Office that the victim's family was nervous about speaking in front of an audience because of the highly emotional nature of Defendant's crime, his granddaughter being the victim, and for the other reasons contained in this Opinion, it appears that the motion served only to intimidate and harass the victim's family.

Counsel now backpedals, stating in his current brief that what he *meant* to say in his Motion is different from what he actually said. He now acknowledges that the protections afforded by the Sixth Amendment, including the protections of the Confrontation Clause, <u>do not apply</u> to a sentencing hearing. He states that by citing these rights, he "did not intend to assert a right of cross-examination or to intimidate the witness," but rather "to demonstrate that among the defendant's rights was the right to notice and an opportunity to be meaningfully heard at sentencing." Dft. Brf. p. 4-5. However, the actual language Defendant used in his Motion was "A defendants' constitutional rights always trump a victim's statutory rights, see, e.g., Davis v. Alaska, 415 U.S. 308, 319 (1974) ("the right of confrontation is paramount to the State's policy of protecting a juvenile offender")." One could only read the preceding statement as an assertion of Defendant's proclaimed right of cross-examination of the victim.

Counsel further acknowledges that while his Motion cited to caselaw regarding limitations on the testimony that may be received by the Court, he did not mean to assert the limitation in the sentencing context. This is senseless, as the only remaining issue before the Court was the sentencing. Counsel's Motion is clear in and of itself, and his *ex post facto* attempts to remedy his misleading and incorrect legal assertions are not convincing--again, far below the standard expected of the criminal bar in this court.

In fact, Counsel's present brief continues this trend, as he cites two cases for the proposition that "due process principles of notice and an opportunity to be heard apply to disputed facts at sentencing." Dft. Brf. p. 2. Defendant cites *United States v. Hayes*, 171 F.3d 389 (6th Cir. 1999) and *United States v. Silverman*, 976 F.2d 1502 (6th Cir. 1992) to apparently argue that Defendant's right to review information that will be used at sentencing extends to a preview of the victim's CVRA statement. Once again, Counsel takes liberties in his reading of the law. Counsel's reliance on *United States v. Hayes*, 171 F.3d 389 (6th Cir. 1999) is without merit. In *Hayes*, the Court held that the sentencing judge's reliance on undisclosed victim impact letters in sentencing the defendant was plain error. Such holding is inapplicable to the present circumstances, as the victim's statement was to take place in open Court, prior to Defendant's statement, with adequate opportunity for Defendant to hear the victim's statement and to respond if he felt compelled to do so. The notion that undisclosed victim impact letters that were admittedly used in sentencing is somehow comparable to a statement made in open court is untenable.

Likewise, Counsel's reliance on *United States v. Silverman*, 976 F.2d 1502 (6th Cir. 1992) is unwarranted. Counsel's quotations from *Silverman* indicate that he anticipated a need to dispute the accuracy and reliability of the victim's statement. He states, "in determining the relevant facts, sentencing judges are not restricted to information which would be admissible at trial. Any information may be considered, *so long as it has sufficient indicia of reliability to support its probable accuracy.*" Dft. Brf. p. 2 (emphasis in original)(quoting Silverman, 976 F.2d at 1504). Apparently, Counsel's argument is that he anticipated the possibility that the victim's statement regarding the impact of his crime on her and her family would lack "reliability" or

8

"accuracy." Considering the horrific nature of the crime committed and no indication on how this belief could be formulated, it is hard to believe that any description of its impact could be overstated.

However, even if Counsel believed that this was possible, his citation to *Silverman* for support of his proposition is incorrect. Ironically, considering Counsel's loose interpretation of the law, *Silverman* not only confirmed that a Defendant is not entitled to trial-like procedural and constitutional protections at sentencing, but it further held that both the sentencing guidelines and traditional sentencing procedures permit consideration of hearsay, including "second hand" hearsay from informants and unidentified sources in presentence reports, without confrontation if the district court finds it to have sufficient or minimally adequate indicia of reliability. Given this holding, it is preposterous to argue that an in-court statement, by the victim in Defendant's presence, with an opportunity for Defendant to respond, deprived Defendant of his rights.

The Court notes that after two opportunities, Counsel has yet to produce a single case standing for his proposition that a Defendant has a right to notice of the content of a victim impact statement prior to its presentation in open court or that the victim must file a motion in order to make a CVRA statement.

The Court further notes that Defendant's Counsel failed to comply with the local rules requiring that a party filing a motion must first seek concurrence for the relief requested and so state in the motion.

Local Criminal Rule 12.1 states: "(a) Motions in criminal cases shall be filed in accordance with the procedures set forth in LR 7.1." Local Rule 7.1 requires the following:

> **LR 7.1 Motion Practice**
> (a) Seeking Concurrence in Motions and Requests.
> (1) The movant must ascertain whether the contemplated motion, or request under Federal Rule of Civil Procedure 6(b)(1)(A), will be opposed. If the movant obtains concurrence, the parties or other persons involved may make the subject matter of the contemplated motion or request a matter of record by stipulated order.
> (2) If concurrence is not obtained, the motion or request must state:
> > *(A) there was a conference between attorneys or unrepresented parties and other persons entitled to be heard on the motion in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought;* or
> > (B) despite reasonable efforts specified in the motion or request, the movant was unable to conduct a conference. (Emphasis added.)

Counsel holds himself out as an "experienced" criminal defense lawyer and a former federal and state prosecutor having practiced in the United States District Court for the Eastern District of Michigan since 2000,[3] yet he "blew off" one of the most important local rules.

The Court believes that Counsel's blatant disregard for Local Rule 7.1 is yet another factor in demonstrating his motive and falls way below the standard of professionalism expected of the criminal defense bar in this court.

### III. Sanctions

Rule 11 of the Federal Rules of Civil Procedure affords the district court the discretion to award sanctions when a party submits to the court pleadings, motions or papers that are presented for an improper purpose, are not warranted by existing law or a non-frivolous extension of the

---

[3] See Mr. Freeman's website *formerfedlawyer.com*.

10

law, or if the allegations and factual contentions do not have evidentiary support. *See* Fed.R.Civ.P. 11(b)(1) through (3). In addition, even if sanctions are appropriate under statute or various rules of the Federal Rules of Civil Procedure, the Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) emphasized that the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation.

In *Chambers*, the Supreme Court affirmed a district court's award of attorney's fees and litigation expenses for the defendant's series of meritless motions and pleadings and delaying actions. Chambers, 501 U.S. at 38. In affirming the district court's resort to its inherent authority for that award, despite the availability of other statutory sanction provisions, the Court stated:

> We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions. First, whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill in the interstices.

Chambers, 501 U.S. at 46.

Here, while the Court finds that Defendant's Motion is in itself a sanctionable offense pursuant to Fed.R.Civ.P. 11, as it is meritless, frivolous and filed for an improper purpose, the Court believes that its inherent authority is the proper vehicle by which to impose sanctions. Had Counsel recognized the impropriety of his initial Motion, Rule 11 would have been sufficient to address his actions, as it serves to address a party's pleadings. However, Counsel's willful refusal to acknowledge the baseless motive, his violation of Rule 7.1, his failure to meet the standards of the criminal law bar, coupled with his meritless defense of his actions and yet

another misleading interpretation of relevant caselaw, forces the Court to resort to its inherent authority to sanction.

The Court believes that a sanction of $2,000.00, to be paid by Defendant's Counsel, is appropriate in these circumstances. In reaching this conclusion, the Court has considered the amount of time it has expended in addressing Counsel's Motion, in reviewing the parties' responses, and in preparing the present Opinion.

## IV. Order

Accordingly,

IT IS ORDERED that Defendant's Counsel is to pay a sanction of $2,000.00 to the Clerk of the Court within ten days of the date of this Order.

Dated: 6/9/2010
Detroit, Michigan

BERNARD A. FRIEDMAN
UNITED STATES DISTRICT JUDGE